**Thomas Charles PEYTON, Petitioner,**

v.

**C. C. PEYTON, Superintendent Virginia State Penitentiary, Respondent.**

**Civ. A. No. 67–C–62–D.**

United States District Court
W. D. Virginia,
Danville Division.

Aug. 27, 1969.

Earle Garrett, Jr., Garrett, Garrett & Smith, Danville, Va., for petitioner.

Gerald L. Baliles, Asst. Atty. General, Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before this court on a petition for a writ of habeas corpus filed *in forma pauperis* by Thomas Charles Peyton, a state prisoner, pursuant to the provisions of 28 U.S.C. § 2241. This case was originally filed in the United States District Court for the Eastern District of Virginia and was ordered transferred to this court by order dated November 22, 1967.

On March 28, 1968 this court entered a decision granting a hearing in order to allow petitioner to establish his claim that there was systematic exclusion of negroes from jury service, including the one which convicted him. Two other claims, concerning the ineffective as-

sistance of counsel and the sufficiency of evidence were disposed of adversely to the petitioner. See Peyton v. Peyton, 282 F.Supp. 908 (W.D.Va.1968) for a report of the above decision.

The decision of March 28, 1968, reported in 282 F.Supp. 908 (W.D.Va. 1968) is incorporated by reference into this decision and thus the petition is properly before this court in compliance with the provisions of 28 U.S.C. § 2254, as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Petitioner is now before this court seeking habeas corpus relief on the sole ground that there was systematic exclusion of negroes from jury service in the Corporation Court of Danville, Virginia, including the jury which convicted him.

The testimony at the state habeas corpus hearing on January 26, 1967, revealed the following. During the year 1960, Mr. Robert H. Clarke and Mr. Bob Wiseman were appointed jury commissioners and took the oath of office as prescribed by Va.Code Ann. § 8–181 in which each promised to fulfill his duties with no discrimination or bias or prejudice in any way. Mr. Clarke testified that he, along with Mr. Wiseman, prepared the jury list for the year 1960. The procedure was to pick five hundred jurors who were citizens of the City of Danville. The jurors were chosen from the (1) City Directory, (2) Telephone Directory, and (3) Voting List. The citizens so selected were to be of good character. Mr. Clarke testified that approximately twenty-five per cent of those selected were negro citizens and seventy-five per cent were white citizens; that no selection was made because they were negro citizens or white citizens, but rather that those so selected were good citizens and would do their duty of serving on the jury.

From the names selected a list was prepared and typed. Before turning the list over to the clerk of the court, each commissioner reviewed the list prepared by the other commissioner (apparently each commissioner prepared his part of

the list separately) to strike the names of those citizens who, to the knowledge of the reviewing commissioner, "were not the type of citizens who should be on a jury" and in their place to add names. The list, with names printed on one side of the paper, was then turned over to the clerk of the court.

Mr. Thomas F. Tucker, Clerk of the Corporation Court of the City of Danville, testified that upon receiving the typewritten list, each name was cut off on an individual slip of paper, folded and placed in the jury box. All the slips were folded in an identical manner and in such a way as to conceal the name. The five hundred separate ballots were then placed in a locked box and placed in a safe. It was the duty of the clerk or his deputy to draw the names from the box upon order of the Judge of the Corporation Court. Mr. Tucker testified that no procedure was used to keep a name off the jury list after such name had been drawn. Mr. Tucker further testified that he did not recall whether any negro citizens had been summoned for the present case, but that he does remember negro citizens serving on juries during the year of 1960.

The above represents the extent of the pertinent testimony adduced at the state habeas corpus hearing. This court, because evidence crucial to petitioner's claim had not been developed at the state hearing, ordered a plenary hearing in accordance with Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

On March 20, 1969, it was agreed by counsel for the petitioner and for the state that the case could adequately be presented to the court upon a stipulation of fact, and that no further testimony would be necessitated. The factual stipulation, as agreed to by counsel is as follows:

## STIPULATION OF FACTS

1. Petitioner is currently serving a sentence of life imprisonment for rape pursuant to a judgment of the Corporation Court for the City of Danville rendered on September 30, 1960. Petitioner was represented by two court-appointed attorneys at trial and was tried by a jury. He did not appeal his conviction.

2. In his petition for a writ of habeas corpus, petitioner alleges that his trial and conviction are void because of systematic exclusion of Negro citizens from jury service. Respondent denies such an allegation.

3. The jury list for the entire year 1960 is not available because prior to 1966 such lists were not retained beyond the regular year.

4. In petitioner's case neither the Grand Jury list nor the Petit Jury list shows any racial designation.

5. The venire list of September 27, 1960, shows that out of the total number of forty-five (45) jurors drawn for petitioner's trial, forty (40) were white and five (5) were Negro. The percentage of white jurors was 88.89%; the percentage of Negro jurors was 11.11%.

6. The said venire list of September 27, 1960, also reveals that of the forty-five (45) jurors drawn for petitioner's jury trial, thirty-three (33) were summoned, of which four (4) were Negro (James E. Brandon, a fifth Negro venireman was deceased). Accordingly, for such venire, 13.2% were Negro and 86.8% were white.

7. Members of the jury in petitioner's case were all white, the Negro jurors on the venire having been excluded by peremptory challenges of counsel.

8. There was at least one Negro member of a grand jury in the City of Danville from 1952 to the time of petitioner's trial in 1960, and one Negro served as a member of the Grand Jury which indicted petitioner.

9. Between 1952 and 1960 no Negroes served as a jury commissioner in Danville, Virginia.

10. There is attached hereto the form of oath given by the Clerk of the Corporation Court of Danville, Virginia, to the jury commissioners, Robert W. Wiseman and Robert H. Clarke, who selected the jurors for the year 1960, and which is the same form of oath administered by the Clerk to all jury commissioners prior and subsequent to the year 1960 (see Exhibit I).[1]

11. Also attached hereto is a letter of instructions to jury commissioners from the Corporation Court of Danville. Said letter is basically the same as that used in 1960. (See Exhibit II.)[2]

12. The jury commissioners of 1960, the aforementioned Robert W. Wiseman and Robert H. Clarke, if called to testify would say that they selected members of the various races and occupations for jury service according to the letter of instructions (see Exhibit II).[3] They would deny the practice of discrimination and the selection of jurors, either as to methods employed or the actual results.

13. The sources used by said jury commissioners in the selection of jurors,

1. The following is the form of oath given by the Clerk of the Corporation Court of Danville and taken by Jury Commissioners before entering upon the discharge of their duties as such:
"I do solemnly swear (or affirm) that I will honestly, without favor or prejudice, perform the duties of jury commissioner during the year ——; that in selecting persons to be drawn as jurors, I will select none but persons whom I believe to be of good repute for intelligence and honesty; that I will select none whom I have been requested to select, and that in all my selections I will endeavor to promote only the impartial administration of justice."

2. "Gentlemen:
I wish to thank you for being willing to serve as Jury Commissioners.
The Clerk of Court will administer the oath to you and I am writing you some directions which I hope will be helpful to you.
It will be your duty to prepare a list of five-hundred citizens of the City of Danville for jury service in the Corporation Court. They should be both male and female citizens, both white and colored, who have resided in the City of Danville for the last six months, and in the State of Virginia, for at least one year. I am sure that you gentlemen will try to select persons of intelligence and good character. There are certain groups of people who are exempt from jury service, and, of course, should not be put on the list. The persons who are exempt are listed in Section 8–178 of the Code of Virginia, and its amendment, which will be made available to you when you are ready to work on the list.
If you have any knowledge of a person being over the age of 70 years, please do not put him on the list. I would suggest to you that you do not place any persons on the list who are known to you to have any serious infirmity or to be in poor health, and also do not put anyone on the list who resides outside the City Limits.
Your jury list should represent a cross section of the community. While it should include qualified members of the various races and occupations residing in the city, it does not mean that there should be any mathmatical (sic) formula or proportion, but it does mean that there should be no discrimination by excluding qualified jurors because of race, color, religious affiliation or sex. You should make an effort to select persons whom you believe to be persons of intelligence and honesty.
Women occupy a peculiar position about serving on the jury. Service by women is optional, while service by men is compulsory. The law requires that you notify the women whom you select, in writing, that their name has been selected by you to be placed on the jury list. She has fifteen days in which to notify you, in writing, that she does not desire to serve. If she does not so notify you, then her name goes on the list. If she does notify you that she does not wish to serve, within fifteen days, you do not include her on your list. Mr. Tucker will furnish you with postal cards with which to notify the women you select.
A City Directory will, of course, be made available to you.
You gentlemen may, of course, determine between you as to when you will work. You will find that Mr. Tucker will be glad to give you any help you may need, and so will I."

3. See Footnote Number 2.

aside from personal knowledge, were the City Directory, the Telephone Directory and voting lists.

14. The real estate listings of taxable property for the year 1960 for the City of Danville, Virginia, show a total listing of 16,834, of which 13,849 were white and 2,985 were Negro. The percentages are:

White—82.3%
Negro—17.7%

15. Registered voters for the City of Danville for the years 1959–1960 show a total of 12,270 registered voters, of which 10,489 were white and 1,781 were Negro. The percentages are:

White—85.5%
Negro—14.5%

16. Based upon data contained in the U. S. Census of Population: 1960— Final Report PC(1)—48B, for Virginia, as prepared by the U. S. Department of Commerce, Luther H. Hodges, Secretary, the City of Danville had a total population in 1960 of 46,577, with the following breakdown:

|  | White | Negro | Other | Percentages |
|---|---|---|---|---|
| (M) | 16,254 | 5,194 | 5 | White—75.15% |
| (F) | 18,750 | 6,364 | 10 | Negro—24.85% |
| Total | 35,004 | 11,558 | 15 |  |

17. The City of Danville in 1960 had a population of persons twenty-one (21) years of age and over of 28,792, with the following breakdown:

|  | White | Percentage |
|---|---|---|
| (M) | 10,120 | 35.1% |
| (F) | 12,284 | 42.7% |

|  | Non-White | Percentage |
|---|---|---|
| (M) | 2,666 | 9.3% |
| (F) | 3,722 | 12.9% |

———◆———

This court believes that Witcher v. Peyton, 405 F.2d 725 (4th Cir. 1969) is controlling authority for this case. An examination of the factual situation in the *Witcher* case reveals the following significant similarities with the present case. In *Witcher* the total adult population in Pittsylvania County of 31,-439, 8,604, or roughly one-quarter, were non-white; in the present case the total adult population (twenty-one years of age and over) in the City of Danville, of 28,792, 6,388, or 22.2 per cent, were non-white. In *Witcher*, of the 37 grand juries impaneled from January 1957 through September 1962, at least ten were all white, and none of the other 27 included more than one Negro; in the present case, "There was at least one Negro member of a grand jury in the City of Danville from 1952 to the time of petitioner's trial in 1960. * * *" In the *Witcher* case, the order summoning the grand jury which indicted the defendant named seven men, one of whom was designated "David Logan (Col.) (Dan River District)"; in the present case, one negro served as a member of the Grand Jury which indicted the petitioner. In the *Witcher* case, of the 35 persons drawn for the defendant's trial only three were negro and none

served on the jury which convicted and sentenced the defendant; in the present case, of the 45 persons drawn for petitioner's trial only five were negro and none served on the jury which convicted and sentenced the petitioner, they having been excluded by peremptory challenges. (Of the forty-five (45) names drawn, thirty-three (33) were summoned for jury duty, of which four (4) were negro; the fifth negro venireman was deceased.) In the *Witcher* case, the names on the jury lists were compiled from the general population; in the present case, the names on the jury lists were selected from the City Directory, the Telephone Directory and the voting lists, as well as from the personal knowledge of the jury commissioners.

Points that don't offer a basis for direct comparison, but which would appear to add weight to the petitioner's case would be that between the year 1952 and 1960 no negroes served as a jury commissioner in Danville, Virginia.

The approach by the jury commissioners in the *Witcher* case, when following the instructions of the state judge, would seem to be substantially the same approach used in the present case as evidenced by the letter of instructions addressed to the jury commissioners by the Corporation Court Judge. In both cases, the jury commissioners deny that discrimination was practiced in the selection of prospective jurors.

The court also notes that the petit jury lists in the *Witcher* case for 1962–63, from which the jurors for Witcher's trial were selected showed that out of a total of 400 persons, 31 persons, or roughly eight per cent, were negroes. In the present case the jury list for the year 1960, from which the jurors for petitioner's trial were drawn, is not available because prior to 1966, such lists were not retained beyond the regular year.

In the present case the state argues that the facts are distinguishable from those of the *Witcher* case and also that because the holding of the *Witcher* case, being an extremely narrow one, makes it inapplicable to the case at hand. In *Witcher*, the court in holding that the state had failed to meet the burden " * * * of showing that, even unintentionally, unconstitutional discrimination was not practiced." stated:

This does not mean that the State may not in the future establish that any such disparity is *not* the result of discrimination. It could, if true, show that the divergence in number by race of the veniremen is due to the difference in number, within the county, of persons of each race who are qualified to serve as jurors—that the ratio of the two races in that total county population is not indicative of the ratio there of qualified white and Negro persons. Witcher v. Peyton, supra at 729.

The state argues that in the *Witcher* case "There was an unexplained number of Grand Juries upon which no negroes had ever served" and that the "unrefuted" evidence is that in the present case negroes have served on *all* Grand Juries in the City of Danville at least since 1952, including the one which indicted the petitioner. The state concludes "There is no evidence of exclusion as was the case in *Witcher*." The "factual stipulation", is not at all clear, since it reads that "There was at least *one* negro member of *a grand jury* in the City of Danville from 1952 to the time of petitioner's trial * * *"; it does not read that there was at least one negro member of *each* or *all* grand juries, the interpretation offered by the state. Even accepting the state's interpretation of the factual stipulation it offers little support to the burden of explanation placed upon the state. "Disproportionate representation was recurrent systematic and relatively uniform in degree", meaning " * * * that a true bill could always be returned without the affirmation vote of a Negro." *Witcher*, supra at 728. The proof of exclusion in *Witcher* was in the form

of an inference and such an inference may fairly be made in the present case.

■ The state argues that proportional racial limitation has been forbidden, citing Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1949), and that the mere fact that only one negro served on the Grand Jury fails to establish deliberate and intentional discrimination, citing Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Thus the state concludes that "petitioner has failed to present evidence of a deliberate and purposeful discrimination in the selection process of the grand jurors." We read *Witcher* to mean that when a habeas corpus petitioner alleges discrimination in the selection of grand jurors and offers proof of a disproportionate representation of defendant's race on the grand and petit juries for the year of trial, as in the present case, the state has the burden of producing evidence to rebut the defendant's prima facie case. The burden is upon the state to show an absence of discrimination practices once the petitioner has established his prima facie case.

The state argues that the unexplained disparity between the percentage of the total negro population and the percentage of negroes serving on the petit jury in the *Witcher* case are absent in the instant case. In the *Witcher* case, three (3) of the thirty-five (35) veniremen drawn for the defendant's trial were negroes; in the present case five (5) of the forty-five (45) drawn for petitioner's trial were negroes (four (4) of the thirty-three (33) jurors summoned for the trial were negro). While the total population of Danville in 1960 (46,577) was composed of roughly one-quarter negroes (11,558 or 24.85%) the state points out that Virginia Law requires a juror to be at least twenty-one years of age, Va.Code Ann. § 19.1–150, and that the following figures have significance; Danville's 1960 population, over twenty-one (21) years of age, con-

sisted of 28,792, of which 6,388 (22.2%) were negroes; and further that because in Virginia jury service by women is optional while jury service by men is compulsory that the following figures must also be considered; Danville's 1960 total male population, twenty-one (21) years of age and over, was 12,786 of which 10,120 were white (35.1%), (See Factual Stipulation #17) and 2,666 were negro (9.3%) (See Factual Stipulation #17). From those figures the state argues that when the population factors are analyzed for compliance with statutory requirements which means a smaller population pool from which to select jurors, the alleged disparity is dispelled. In analyzing the figures as argued by the state this court doubts the validity of considering a population pool of prospective jurors which excludes female members because their jury service is optional. In the letter of instructions, attached to the stipulation of fact, the jury commissioners are instructed to select "both male and female citizens" for jury service. It would be pure conjecture to guess how many of the women elect to exercise their option and not serve on a jury once they have been selected. Even considering the state's figures as argued, they do not depart substantially from the figures, when considered as percentages, in the *Witcher* case.

We agree that the letter of instructions, from the judge to the jury commissioners admonishing the commissioners to select a cross-section of the community, is evidence of the lack of discrimination in the selection of petit jurors. However, we do not think it of a nature, either by itself or in combination of this case with the other parts, to rebut the petitioner's prima facie case.

The only remaining argument of substance offered by the state is that in the *Witcher* case the names of negroes appearing as grand jurors were designated by the word "Col." on each of the writs of venire facias issued to summons them and the same designation was

present on the petit jury lists prepared by the jury commissioner, whereas in the present case no such designation was used. The petitioner argues that the home address appearing beside the chosen jurymen is as clear a designation of race as the designation "Col.", the negroes in Danville living in definite restrictive geographical areas, these areas being known to the various persons involved in the selection process. The petitioner notes that the home addresses were shown on all sources available to the jury commissioners from which to select the prospective jurors, namely the City Directory, Telephone Directory and the voting lists. While this court finds nothing inherently wrong with addresses appearing beside the names of persons selected for jury duty, we nevertheless cannot agree with the state that the absence of the designation "Col." is a distinguishing factor sufficient to rebut the petitioner's prima facie case.

Because of the significant factual similarities of this case with the *Witcher* case, this court is compelled to hold that the petitioner has presented a prima facie case of discrimination in the processes of jury selection and further that the state has failed to meet the burden "of showing that, even unintentionally, unconstitutional discrimination was not practiced." Witcher v. Peyton, 405 F.2d 725, 730 (4th Cir. 1969).

For the foregoing reasons it is adjudged and ordered that the writ of habeas corpus is granted.

It is further ordered that the execution of the writ is stayed for a period of ninety (90) days within which the Commonwealth may re-try the petitioner or appeal. In the event the Commonwealth does appeal, any further stay must be sought in the Court of Appeals. In the event the Commonwealth does not appeal but decides to re-try the petitioner, it may petition this court for a further reasonable stay of the execution of the writ.